# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 17, 2005         Decided  May 13, 2005

No. 03-1147

SBC COMMUNICATIONS INC.,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

Z-TEL COMMUNICATIONS, INC., ET AL.,
INTERVENORS

———

On Petition for Review of an Order of the
Federal Communications Commission

———

*Michael K. Kellogg* argued the cause for petitioner.  With him on the briefs were *Colin S. Stretch*, *James D. Ellis*, *Gary L. Phillips*, and *Christopher Heimann*.

*Richard K. Welch*, Counsel, Federal Communications Commission, argued the cause for respondents.  With him on the brief were *R. Hewitt Pate*, Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Steven J.*

*Mintz*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, *John E. Ingle*, Deputy Associate General Counsel, and *Suzanne M. Tetreault*, Counsel. *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, U.S. Department of Justice, and *Rodger D. Citron*, Counsel, Federal Communications Commission, entered appearances.

Before: SENTELLE and ROBERTS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: SBC challenges a Federal Communications Commission order finding that SBC (through various affiliates) violated the terms of a requirement, imposed as a condition to the FCC's approval of a merger between SBC and Ameritech, that SBC "offer" intervenors Z-Tel and Core access to "shared transport" for intraLATA toll call traffic. Because the FCC failed to address the questions whether telecommunications carriers could waive their right to shared transport under the merger order and whether Z-Tel and Core had in fact waived that right, we vacate the Commission's order and remand to the Commission for further proceedings.

\* \* \*

Under the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, codified at 47 U.S.C. § 151 et seq. (the "Act"), incumbent local exchange carriers ("ILECs") are required to allow new entrants, known as competitive local exchange carriers ("CLECs"), to lease "unbundled network

elements" ("UNEs") for use by the CLECs in providing telephone service.  See 47 U.S.C. § 251(c)(3).  The terms and conditions of this obligation to "unbundle" are set forth in "interconnection agreements" ("ICAs") negotiated between the ILEC and CLEC or, if necessary, arbitrated by state commissions.  *Id.* at §§ 252(a), (b).  The parties must submit any interconnection agreement to the relevant state commission for approval.  *Id.* at § 252(e).  Where an ILEC provides a network element to one CLEC under a state-approved agreement it must make that element available to any other "requesting" CLEC.  *Id.* at § 252(i).  The Act also makes clear that ILECs and CLECs may enter ICAs that differ from the unbundling requirements of §§ 251(b) or (c).  See *id.* at § 252(a)(1).

The FCC has determined that the network elements subject to the unbundling requirements include "shared transport" facilities.  See *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15,499, 15,718, ¶ 440 (1996). "Shared transport is defined as the transmission facilities shared by more than one carrier, including the incumbent LEC, between end office switches, between end office switches and tandem switches, and between tandem switches in the incumbent LEC network."  47 C.F.R. § 51.319(d)(4)(i)(C) (2004).

The SBC-Ameritech merger required FCC approval, to be granted only if the Commission found that the attendant license transfers would serve "the public interest, convenience, and necessity."  47 U.S.C. § 310(d).  The Commission approved the merger subject to conditions aimed at mitigating certain potential anticompetitive effects.  See *In re Applications of Ameritech Corp. and SBC Communications*

*Inc.*, 14 FCC Rcd 14,712 (1999) ("*Merger Order*"), vacated in part on other grounds, *Ass'n of Communications Entrs. v. FCC*, 235 F.3d 662 (D.C. Cir. 2001). Among these was the requirement that SBC and appropriate affiliates offer shared transport access to CLECs in the states formerly served by Ameritech, a condition imposed in response to Ameritech's prior reluctance to offer unbundled access to shared transport services. See *Merger Order,* 14 FCC Rcd at 14,888 ¶ 425. Specifically, that condition provided:

> Within 12 months of the Merger Closing Date (but subject to state commission approval and the terms of any future Commission orders regarding the obligation to provide unbundled local switching and shared transport), SBC/Ameritech *shall offer shared transport* in the SBC/Ameritech Service Area within the Ameritech States under terms and conditions, other than rate structure and price, that are substantially similar to (or more favorable than) the most favorable terms SBC/Ameritech offers to telecommunications carriers in Texas as of August 27, 1999. Subject to state commission approval and the terms of any future Commission orders regarding the obligation to provide unbundled local switching and shared transport, SBC/Ameritech *shall continue to make this offer*, at a minimum, until the earlier of (i) the date the Commission issues a final order in its UNE remand proceeding . . . finding that shared transport is not required to be provided by SBC/Ameritech in the relevant geographic area, or (ii) the date of a final, non-appealable judicial decision providing that shared transport is not required to be provided by SBC/Ameritech in the relevant geographic area.

*Merger Order,* 14 FCC Rcd at 15,023-24, App. C ¶ 56 (emphasis added).

SBC interpreted the *Merger Order* to require that it provide shared transport in the former Ameritech states— Illinois, Indiana, Michigan, Ohio and Wisconsin—only for local exchange service, not for "intraLATA toll service." LATAs (Local Access and Transport Areas) are service areas within which the Bell Operating companies were permitted to operate and provide telephone service. See *United States v. Western Elec. Co.*, 569 F. Supp. 990, 993-94 (D.D.C. 1983). IntraLATA service is what consumers generally know as local service; intraLATA "toll" calls, however, encompass those long-distance calls that do not travel beyond the borders of a single LATA. See *SBC Communications Inc. v. FCC*, 138 F.3d 410, 412 n.1 (D.C. Cir. 1998).

The Commission initiated a proceeding with a notice of apparent liability, and went on to find that SBC had "failed to offer shared transport" for intraLATA toll service in the five former Ameritech states, and that this failure violated ¶ 56 of the merger conditions. *In the Matter of SBC Communications, Inc.*, 17 FCC Rcd 19,923, 19,923-24, ¶¶ 1-2 (2002) ("*Forfeiture Order*"). As authorized by 47 U.S.C. § 503(b)(2)(B) and 47 C.F.R. § 1.80(b)(2), (b)(5) (2002), the Commission imposed on SBC the statutory maximum fine of $1.2 million for each of the five states, for a total of $6 million. See *Forfeiture Order*, 17 FCC Rcd at 19,934-37, ¶¶ 22-27. SBC petitioned for review, and we upheld the Commission. *SBC Communications, Inc. v. FCC*, 373 F.3d 140, 151-52 (D.C. Cir. 2004) ("*SBC I*").

In August 2001 two CLECs, Z-Tel Communications and CoreComm Communications, Inc., filed a joint complaint

with the FCC under 47 U.S.C. § 208, alleging that nine SBC affiliates had improperly refused to allow them to use shared transport to complete intraLATA toll calls in violation of the Act, the FCC's implementing rules, and the *Merger Order*.

With regard to eight states outside the former Ameritech region the FCC denied the complaint. *In the Matter of CoreComm Communications, Inc. et al. v. SBC Communications Inc. et al.*, 18 FCC Rcd 7568, 7578-82, ¶¶ 26-35 (2003) ("*Liability Order*"). For seven states the matter turned on circumstances of no great relevance here. As to California, the Commission found no violation because Z-Tel (Core was irrelevant because it had no agreement with Pacific Bell and never attempted to negotiate one) had voluntarily exercised its right under § 252(i) to opt-in to an existing ICA that did not permit the use of shared transport for intraLATA toll traffic. *Id.* at 7579-81, ¶ 29. Notwithstanding SBC's obligation to make shared transport access available for intraLATA toll traffic under § 251(c)(3) and the Commission's rules, see *id.* at 7581, ¶ 30, the Commission found no violation because "the obligations created by section 251 and our rules are effectuated through the process established in section 252—that is, by reaching agreement through negotiation, arbitration, or opt-in," *id.*, and in California Z-Tel had sought to negotiate an amendment to the (in this respect) narrower pre-existing ICA without, as required, "comply[ing] with [the] modification or change of law provisions" in the ICA, *id.*

The FCC granted the complaint, however, with respect to the five states in the former Ameritech region. Paragraph 56 of the *Merger Order* obligated SBC to "offer" shared transport for intraLATA toll. The Commission appeared to

assume (incorrectly) that SBC's conduct in relation to Core and Z-Tel rested on ICAs antedating the *Merger Order*:

> To the extent that [SBC's] *existing agreements* with the Complainants did not make available shared transport for intraLATA toll, the *Merger Order* required [SBC] to agree to the necessary amendments to do so. When Core and Z-Tel asked for this functionality, however, [SBC] just said "no."

*Id*. at 7577, ¶ 21 (emphasis added). Although "under section 252(a)(1), parties are free to negotiate terms that do not meet the requirements of sections 251(b) and (c)," *id*. at 7577, ¶ 23, the Commission held that "[e]ven if sections 251 and 252 did not obligate Defendants to amend their agreements with Core and Z-Tel to provide for shared transport for intraLATA toll traffic, the *Merger Order* did." *Id*. The Commission reasoned that SBC's contrary view "would run entirely counter to the basic purpose of the paragraph 56 condition," *id*. at 7577, ¶ 24, because "carriers who had been denied shared transport previously [under ICAs antedating the *Merger Order*] would be unable to amend their agreements to take advantage of a merger condition specifically designed to remedy the situation," *id*. at 7578.

Although the Commission assumed that SBC was standing on pre-*Merger Order* ICAs, SBC points out that Z-Tel and Core had entered into or amended ICAs with SBC after the *Merger Order*—ICAs that did not provide for shared transport for intraLATA toll. According to SBC submissions that appear uncontradicted, Z-Tel in Illinois had "opted-in" to the "Illinois Base Agreement," which did not provide this functionality; that agreement was approved by the relevant Illinois commission on August 9, 2000, long after issuance of

the *Merger Order* on October 8, 1999. See Decl. of Rhonda Robinson ¶ 6 (Joint Appendix ("J.A.") 56). In Indiana, Ohio, and Wisconsin, Z-Tel did not *seek* the now disputed functionality. See Revised Joint Statement ¶ 19 (J.A. 83). And in Michigan, there was no ICA between Z-Tel and SBC. *Id.* As for Core, it and SBC's affiliates entered into ICAs in Michigan, Illinois, and Ohio before the *Merger Order*, but amended them after the order to respond to the merger conditions; the amendments provided for shared transport for intraLATA toll calls, but in an "interim" form that evidently ceased to be available, see Decl. of Melvin Flowers ¶ 9-19 (J.A. 62-66), for reasons that do not appear clearly in the record. In Indiana and Wisconsin, there were no ICAs between Core and SBC. *Id.* at ¶¶ 5-7 (J.A. 61-62). For Wisconsin, Core sought to adopt an existing ICA, but when SBC's affiliate sent the agreement to Core for its signature, Core never returned a signed agreement. *Id.* at ¶ 6 (J.A. 61). The record seems completely obscure on SBC-Core relations in Indiana.

SBC argues that the Commission's order is arbitrary and capricious. It makes a broad argument that the Commission was inconsistent in its treatment of the statutory obligation (in California) and the ¶ 56 obligation. In California Z-Tel, and in the Ameritech states both Z-Tel and Core, had evidently entered into post-*Merger Order* ICAs that didn't provide shared transport access for intraLATA toll calls and had sought to amend those ICAs—without following the ICAs' provisions relating to contract modification or changes of law. That was fatal to Z-Tel's claims of statutory violation in California. SBC argues that it should have had the same effect on the ¶ 56 claims, on the principle that ¶ 56 was simply "intended to create a *substantive* obligation, akin to an FCC unbundling rule, that would be implemented through the 1996

Act's procedural framework; it was not intended to be an end-run around that framework." Petitioner's Br. at 16. SBC also makes a narrower argument that the Commission reached its conclusion on the basis of a complete misunderstanding, thinking that the SBC affiliates held ILECs to the terms of pre-*Merger Order* ICAs, whereas in fact they rested on post-*Merger Order* ICAs whose failure to cover shared transport for intraLATA toll service (to the extent true at all) resulted from Z-Tel's and Core's waiver of their entitlements under the *Merger Order*.

\* \* \*

*Standing*. To satisfy Article III's standing requirement, a party must meet the well-known requirements of injury-in-fact, causation and redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); see also *Rainbow/PUSH Coalition v. FCC*, 330 F.3d 539, 542 (D.C. Cir. 2003). According to the Commission, SBC sustained no injury as a result of the *Liability Order* because the order simply "echoes" the Commission's holding in the *Forfeiture Order* that SBC's behavior had violated the merger condition in the Ameritech states. And, it says, the *Liability Order* imposed no additional harm on SBC beyond that in the *Forfeiture Order*, as it added no burdens in addition to the $6 million forfeiture. Even though at one point Z-Tel and Core could have taken advantage of the present order to seek damages, those firms neglected to file a supplemental complaint demanding damages within the Commission's 60-day time limit, see 47 C.F.R. § 1.722(e) (2003), and such additional relief is therefore now barred.

The Commission's theory is mistaken. Whereas the *Forfeiture Order* found that CLECs generally had a right to shared transport for intraLATA toll, see *Forfeiture Order*, 17 FCC Rcd at 19,933, ¶ 20, the *Liability Order* found that SBC must supply the functionality to two particular CLECs *notwithstanding the terms of their ICAs*, see *Liability Order*, 18 FCC Rcd at 7576-78, ¶¶ 20-25. Thus, the *Liability Order* clarifies the Commission's understanding of ¶ 56, as set out both in that order and in the *Forfeiture Order*, and clarifies it adversely to SBC. The Commission's "echo" argument is at best only a variant of its preclusion theory, to which we now turn.

*Issue and claim preclusion*. Characterizing the present issue as whether "the Commission acted unlawfully in holding SBC liable for violating the paragraph 56 merger condition," Respondents' Br. at 17, the Commission argues that this court resolved that issue against SBC when it upheld the *Forfeiture Order* in *SBC I*; the doctrine of issue preclusion, it says, therefore bars SBC from raising the issue here.

Issue preclusion is not the doctrine the Commission is groping for. It bars relitigation of an issue by a party "that has *actually litigated [the] issue*." Restatement (Second) of Judgments at 6 (1982) (emphasis added). Here the issue is SBC's liability to two specific CLECs, revolving particularly around the circumstances under which a CLEC can waive, or inadequately assert, rights to the functionality. Had the *Forfeiture Order* addressed SBC's relations with those firms, or the issue of inadequate CLEC assertion of entitlements, issue preclusion might well be apropos. But it did not.

The Commission might, however, have a defense under issue preclusion's cousin, claim preclusion. It embodies the

principle "that a party who once has had *a chance to* litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." Restatement (Second) of Judgments at 6 (1982) (emphasis added). It would not be completely implausible for the Commission to argue that SBC should have raised in the forfeiture proceedings the issues before us now—relating to the procedures for enforcement and the waivability of ¶ 56 entitlements.

We proceed to address the claim preclusion possibility, in part because of the historic confusion about how the concepts of claim and issue preclusion are applied, see, e.g., 16 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4414, at 349 & n.45 (2d ed. 2002), in part because the two defenses have a somewhat jurisdictional character: "As res judicata belongs to courts as well as to litigants, even a *party*'s forfeiture of the right to assert it . . . does not destroy a *court*'s ability to consider the issue sua sponte." *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997).

But the purpose of claim preclusion is to prevent "litigation of matters that *should have been* raised in an earlier suit." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985) (emphasis added); cf. *Yamaha Corp. of America v. U.S.*, 961 F.2d 245, 254 (D.C. Cir. 1992) (holding that issue preclusion would be unfair if applied "when the losing party clearly lacked any incentive to litigate the point in the first trial"); *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 n.22 (1982) (explaining that the unfairness concerns underlying issue preclusion doctrine apply equally in the case of claim preclusion). Here, the record offers little support for the Commission's implicit claim that SBC, defending itself against the claim that it had

an obligation *generally* under the *Merger Order* to provide shared transport for intraLATA toll calls, should have been expected to assert innocence in relation to individual CLECs that may have waived or failed to assert proper demands for that functionality. Nothing in the *Forfeiture Order*, or in what the parties have placed before us, suggests that an attempt by SBC to raise the issue of its specific relations with these two firms would have made a particle of difference in the outcome. Indeed, in calculating the $6 million forfeiture on the basis of the number of states in the Ameritech region (a maximum penalty of $1.2 million in each of the five states), the Commission went out of its way to observe that for a company of SBC's size, "a $6,000,000 forfeiture is not excessive" and "a smaller forfeiture would lack adequate deterrent effect." *Forfeiture Order*, 17 FCC Rcd at 19,935, ¶ 24.

The Commission had the burden of establishing the defense, see *Donovan v. Williams Enterprises, Inc.*, 744 F.2d 170, 178 (D.C. Cir. 1984), and it has failed to do so, possibly because it never formulated the issue correctly. Compare *Stanton*, 127 F.3d at 77 (noting, in addressing belatedly raised preclusion issues, that "the relevant facts stand uncontroverted in the record before us").

*Merits*. Reaching the merits at last, we start with SBC's argument that because the merger conditions are not FCC rules promulgated pursuant to notice and comment, but rather are "akin to a consent decree" between SBC and the Commission, the FCC's interpretation of them is not entitled to the deference ordinarily due an agency interpretation of its rules under *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994). In fact our precedents, recognizing agency authority to adjudicate issues and enter into settlements, treat

settlements between an agency and a private party as equivalent to agency regulations for deference purposes. See *National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1568-70 (D.C. Cir. 1987) (if the language of a settlement agreement is ambiguous, the court will give deference to the agency's reading of it); see also *MCI WorldCom Network Services, Inc. v. FCC*, 274 F.3d 542, 547-48 (D.C. Cir. 2001).

SBC's primary substantive argument is that the *Merger Order* incorporates the 1996 Act's interconnection agreement process, 47 U.S.C. § 252, so that CLECs must comply with any existing ICAs' modification and change of law provisions in order to get the benefit of any functionality that ¶ 56 newly made available, as the Commission found was the case in California for ordinary UNEs under § 251. To show that the *Merger Order* clearly mandates this requirement, SBC equates the words stating the ILECs' duty to supply the relevant UNEs ("offer" in the *Merger Order* and "provide" in 1996 Act). To support that equation, SBC rests heavily on our conclusion in *SBC I* that the *Merger Order*'s requirement that SBC "offer" the functionality was equivalent, in that context, to "provid[ing]" it under § 251. See *SBC I*, 373 F.3d at 147. But our discussion there simply rejected SBC's creative argument that SBC wasn't "offer[ing]" shared transport for intraLATA toll calls in Texas, the benchmark under the *Merger Order*, because it was providing the service involuntarily under the statute. *Id*. We never made an all-purpose equation of the two terms.

SBC also argues that ¶ 56's obvious gaps—especially the explicit exception for "rate structure and price"—necessarily mean that the § 252 process must apply. The Commission doesn't really respond on this point; indeed, its counsel conceded at oral argument that the issue of price might

necessitate use of the negotiation and arbitration procedures set forth in § 252. Oral Arg. Tape at 22:56-23:27. But we don't think that such a substantive gap—which the parties might well have expected to be filled, for example, by states' exercises of their powers to set UNE prices within the TELRIC framework devised by the Commission, see *AT&T v. Iowa Utils. Bd.*, 525 U.S. 366, 384-85 (1999); see also 47 U.S.C. § 252(c)(1)—makes it by any means clear that ¶ 56 contemplated wholesale importation of the statute's procedures.

At oral argument SBC somewhat amplified its suggestion that ¶ 56 had only substantive significance and implicitly relied on the procedures of § 252. It pointed out that the Commission's unbundling rules had been vacated at the time of the *Merger Order*, so that no unbundling requirement formally existed. Oral Arg. Tape at 7:25-8:49. At its best, however, this argument would only mean that a purely substantive reading of ¶ 56 would still achieve a material Commission goal. That would not be inconsistent with ¶ 56's *also* imposing on SBC a more affirmative procedural duty than does § 252. That is especially true in light of ¶ 56's command that SBC "continue to make this offer [of shared transport]" available. Accordingly, we find the provision ambiguous, and the Commission's reading—in the sense of rejecting wholesale incorporation of § 252—not unreasonable.

On the question whether the two complaining CLECs waived their entitlement to shared transport for intraLATA toll calls, the Commission is on far weaker footing. Its order said that ¶ 56 "required [SBC] to agree to the necessary amendments." *Liability Order*, 18 FCC Rcd at 7576-77, ¶ 21. SBC admits that it didn't affirmatively extend offers to Z-Tel and Core for access to shared transport for intraLATA toll

calls. Oral Arg. Tape at 9:42-10:55. But it argues that Z-Tel and Core waived their right to that functionality by voluntarily entering into or amending ICAs (that didn't provide it) *after* the *Merger Order*. See "Defendants [sic] Legal Analysis," filed October 10, 2001, at 9-14 (J.A. 48-53); see also supra at 6-7.

Although the Commission's order didn't address the issue of waiver, it conceded at oral argument that the requirement to "offer" shared transport is potentially waivable. Oral Arg. Tape at 18:04-20:59. The concession is in tune with § 252(a)(1), which explicitly allows "binding agreement[s]" between ILECs and CLECs for provision of network elements "without regard" to the standards of §§ 251(b) & (c).

Here the Commission order's only allusion to SBC's waiver argument was at best a glancing blow:

> To the extent that [SBC's] *existing agreements* with the Complainants did not make available shared transport for intraLATA toll, the *Merger Order* required [SBC] to agree to the necessary amendments to do so. When Core and Z-Tel asked for this functionality, however, [SBC] just said "no."

*Liability Order,* 18 FCC Rcd at 7577, ¶ 21.

By referring to the ICAs in question as "existing agreements," the Commission revealed an assumption contrary to the facts as SBC developed them in the record: in reality the agreements SBC invoked seem to have postdated the *Merger Order*. Further, the Commission never responded to SBC's basic concept that the complainants had voluntarily abandoned their ¶ 56 entitlements to shared transport for intraLATA toll calls. Thus the Commission has never

interpreted the exact scope of the duty. Did it oblige SBC to take aggressive steps to alert CLECs to the possibility, as the fast food seller might ask, "And you want fries with that?" Indeed, when SBC filed interrogatories aimed at creating a record on the negotiation of the post-*Merger Order* ICAs (Interrogatory 3), Z-Tel and Core refused to respond on the ground that the subject was irrelevant, see Complainant's [sic] Objections to Interrogatories at 3-4 (J.A. 70-71), and the Commission upheld that refusal, see October 31, 2001 Letter from the Commission's Enforcement Bureau, to Michael B. Hazzard, Counsel for Complainants, and Christopher M. Heimann, Counsel for Defendants (J.A. 75-77). We cannot rule on the Commission's interpretation of the *Liability Order* until it elucidates the scope of the duties imposed. See *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947).

We vacate the order and remand for further proceedings in which the Commission may develop (and apply) its interpretation of the conditions under which CLECs may waive the ¶ 56 entitlement.

*So ordered.*