# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 10, 2005     Decided December 16, 2005
Reissued February 9, 2006

No. 03-1251

NATIONAL COMMITTEE FOR THE NEW RIVER, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

EAST TENNESSEE GROUP, ET AL.,
INTERVENORS

———

Consolidated with
03-1411, 04-1136

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*James W. McNeely* argued the cause and filed the briefs for petitioner.

*Dennis Lane*, former Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief was *Cynthia A. Marlette*, General Counsel. *Lona T. Perry*,

Attorney, entered an appearance.

*Henry S. May, Jr.*, *John S. Decker*, *Catherine O'Harra* were on the brief for intervenor East Tennessee Natural Gas, LLC in support of respondent. *Paul M. Teague* and *Jennifer N. Waters* entered appearances.

Before: SENTELLE, RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: National Committee for the New River, Inc. ("NCNR"), petitions for review of seven Federal Energy Regulatory Commission ("FERC") orders denying an assortment of legal claims. Because we lack jurisdiction, we dismiss the petitions for review.

I.

In 2001, East Tennessee Natural Gas Company ("East Tennessee") petitioned FERC for permission to extend its Tennessee-based natural gas pipeline about 94 miles from Virginia to North Carolina. 98 FERC ¶ 61,331 (2002). The proposed extension was known as the "Patriot Project." In 2002, FERC issued East Tennessee a certificate of public convenience and necessity, subject to 69 conditions, pursuant to Section 7 of the Natural Gas Act, 15 U.S.C. § 717f. *See* 101 FERC ¶ 61,188, 61,764-72 (2002).

The conditions involve a range of arcana related to construction of the pipeline. For example, Condition 36 requires East Tennessee to minimize the Project's impact on the southern population of the bog turtle. Condition 43 sets a 10-day deadline for cleanup after the backfilling of trenches. Other conditions require East Tennessee to file certain documents with

FERC. Condition 8, for example, provides that East Tennessee must file weekly status reports with FERC until all construction activities are complete. And Condition 5, central to this case, sets forth the terms under which East Tennessee may realign the pipeline's route during the course of its construction. *See id.* at 61,765.

NCNR is an environmental group devoted to protecting the New River, which travels northward from North Carolina through southwest Virginia. NCNR fought the initial certification as an intervenor and lost. FERC denied a request for stay and rehearing, 102 FERC ¶ 61,225, 61,655 (2003), and this Court affirmed. *See Nat'l Comm. for the New River, Inc. v. FERC*, 373 F.3d 1323, 1325 (D.C. Cir. 2004) (holding that FERC's certification was not arbitrary and capricious). The pipeline has been operational since late 2003.

Certification and the project's completion did not deter NCNR from mounting further legal challenges against East Tennessee. NCNR filed almost 20 adversarial pleadings after the project was certified. This particular appeal concerns seven FERC orders addressing five legal issues arising from those pleadings. For the most part, the issues boil down to claims that East Tennessee failed to live up to the conditions of certification. We discuss each in turn, though only the first merits more than cursory analysis.

II.

NCNR's primary claim, the subject of four FERC Orders and two rehearings, is that East Tennessee's route realignments were unauthorized because they deviated too far from the route FERC certified. FERC maintains that it had approved the realignments as garden-variety changes, often at the behest of landowners. NCNR argues that East Tennessee moved the

pipeline so far in spots that it no longer resembles the route originally approved. At the very least, NCNR wants this Court to remand the matter to FERC, which might then order East Tennessee to conduct new environmental impact studies for the realigned routes.

We do not evaluate the realignments on the merits because we hold that NCNR lacks standing to bring this challenge.[1] Aesthetic and environmental harms may confer Article III standing if they describe a concrete and particularized injury in fact that is actual or imminent, causally linked to the conduct at issue, and redressable by the relief requested. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The harms alleged here do not meet this standard.

NCNR submitted five affidavits describing the harms its members would suffer if a pipeline were constructed under and around the New River. The affidavits recount manifold environmental injuries, including impacts from soil erosion and blasting during construction, scars on the landscape, and water pollution. They also portray aesthetic harms such as degradation of the viewshed, decreased pleasure from swimming and fishing in the river, and lessened enjoyment picnicking and hiking near it. These harms mirror those deemed sufficient in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000), and *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426 (D.C. Cir. 1998) (en banc), *cert. denied*, 526 U.S. 1064 (1999).

These allegations are no longer sufficient on the present record. All five affidavits focus on the general harms that would arise from the construction of a natural gas pipeline under and across the New River. But NCNR already lost that battle when

---

[1] Because we decide this issue on standing grounds, we do not reach mootness.

this Court upheld FERC's certification of the pipeline. *See New River*, 373 F.3d at 1334. Such broad allegations that a pipeline's construction will cause environmental and aesthetic harms no longer suffice. To have standing to challenge route realignments, NCNR must demonstrate that its members have suffered, or will suffer, specific environmental and aesthetic harms as a result of the route realignments themselves. NCNR's affidavits do not explain why any realignment would inflict a concrete and particularized injury on its members.

A further consequence of this failure to plead particularized injury arising from the route realignments is that the injuries discussed in the affidavits are not redressable by the relief requested. *Cf. Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984) (observing that causation and redressability sometimes converge). Assume this Court were to agree with NCNR that the route realignments were too drastic. The remedy would not be to scrap the pipeline altogether. At most, it might be moving the pipeline back to its original location. NCNR has failed to explain how this remedy would alleviate the general environmental and aesthetic harms stemming from the Patriot Project itself. Simply put, our earlier decision permitted the pipeline to be built, so general harms stemming from construction of a pipeline do not confer standing for this lawsuit.

Beyond the route realignments, NCNR raises four additional issues. The first is whether East Tennessee's successful effort to drill under the New River two years ago should have been declared a "failure." We assume NCNR is referring to Condition 22 of the Certification,[2] a safety-valve

---

[2] That Condition provides:

If East Tennessee cannot successfully use [horizontal directional drilling] at the proposed crossing of the New River

allowing East Tennessee to abort an ill-executed drilling effort in order to find a new spot more amenable to drilling. This Condition confers no rights upon NCNR. Moreover, since the pipeline has been operational for over two years, we hold that the issue is moot: Having succeeded, the drilling effort patently was not a failure.

The next issue is procedural in nature. NCNR argues that it was entitled to service of documents by East Tennessee after certification. "[I]n cases in which a party *has been accorded a procedural right* to protect his concrete interests, the primary focus of the standing inquiry is not the imminence or redressability of the injury to the plaintiff, but whether a plaintiff who has suffered personal and particularized injury has sued a defendant who caused that injury." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) (emphasis added) (internal quotation marks and citation omitted). Here, NCNR has no such procedural right. As FERC has explained repeatedly, its rules do not require that all parties to a certification be served with documents after certification is finished. "Rule 2010[, 18 C.F.R. § 385.2010,] does not require that former parties be served with pleadings after a permit, license, or exemption has been issued." 105 FERC ¶ 61,139, 61,737 n.6 (2003) (citing *Pacific Gas & Elec. Co.*, 40 FERC ¶ 61,035 (1987); *Joseph M. Keating*, 40 FERC ¶ 61,254 (1987); *Kings River Conservation Dist.*, 36 FERC ¶ 61,365 (1986)). Lacking a valid procedural right to post-certification service, NCNR has no standing to bring this challenge.

---

and the New River Trail State Park, East Tennessee shall provide an analysis of rerouting the pipeline across the New River at a location where geotechnical investigations indicate [the drilling] will be more feasible. . . .

101 FERC at 61,767.

Next, NCNR raises another procedural claim to which it has no entitlement. It argues that FERC's November 14 Order was invalid because it was signed by the Deputy Director of the Office of Energy Projects, not the Director himself. This claim is frivolous. As FERC explained, the Director could—and did—delegate signing responsibility to his deputy and designee. FERC regulations state: "Where the Commission, in delegating functions to specified Commission officials, permits an official to further delegate those functions to a designee of such official, *designee shall mean the deputy of such official*, the head of a division, or a comparable official as designated by the official to whom the direct delegation is made." 18 C.F.R. § 375.301(b) (emphasis added). Even assuming NCNR had a procedural right in this case, it has not shown a "substantial probability" that the agency's action "created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff." *Fla. Audubon*, 94 F.3d at 669; *see also Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 6 (D.C. Cir. 2005). NCNR has not articulated what interests it believes are at risk, and this Court has no reason to assume that a rogue deputy surreptitiously issued FERC's order against the Director's will.

Finally, NCNR appeals a FERC order rejecting the claim that East Tennessee failed to consider a particular route alternative. *See* 106 FERC ¶ 61,159. NCNR's passing reference in its brief was arguably insufficient to preserve the issue. *See City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003) (per curiam). But even assuming it was not waived, the claim is barred on res judicata grounds.[3] *See Apotex, Inc. v.*

---

[3] This Circuit has described res judicata as having "a somewhat jurisdictional character." *SBC Commc'ns v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005); *see also Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997).

*FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) ("[T]he doctrine of res judicata holds that a judgment on the merits in a prior suit bars a second suit involving identical parties . . . based on the same cause of action."). The parties were required to—and indeed did—raise route alternatives during the initial certification process in November 2002. *See* 101 FERC at 61,755. FERC addressed further arguments concerning alternatives in its February 27, 2003, denial of a request for rehearing. *See* 102 FERC at 61,658-60. This Court affirmed, specifically rejecting NCNR's arguments that route alternatives were not adequately considered. *See New River*, 373 F.3d at 1331-32. Accordingly, res judicata precludes us from readdressing the merits of NCNR's claim.

## III.

For the reasons set forth above, NCNR's petitions for review are dismissed.

*So ordered.*