# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 10, 2007      Decided January 22, 2008

No. 07-1040

NATURAL RESOURCES DEFENSE COUNCIL,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND
STEPHEN L. JOHNSON, ADMINISTRATOR,
U.S. ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

CHEMTURA CORPORATION AND
AMERICAN CHEMISTRY COUNCIL,
INTERVENORS

———

On Petition for Review of an Order of the
Environmental Protection Agency

———

*Benjamin H. Longstreth* argued the cause for petitioner. With him on the briefs was *David D. Doniger*.

*Steven E. Rusak*, Attorney, United States Department of Justice, argued the cause for respondents. With him on the brief were *John C. Cruden*, Deputy Assistant Attorney

General, and *Diane E. McConkey*, Counsel, U.S. Environmental Protection Agency.

*David B. Weinberg* and *Eric Andreas* were on the brief for intervenor American Chemistry Council.

Before: SENTELLE and HENDERSON, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:   Natural Resources Defense Council challenges the Environmental Protection Agency's 2007 "critical use" exemption for methyl bromide on the grounds that it applies an unreasonable interpretation of the Clean Air Act and that it is arbitrary and capricious in light of the United States' agreements with other nations on reducing the use of methyl bromide and other ozone-depleting chemicals.   The 2007 exemption applied a framework that EPA adopted in a 2004 rule—a rule that NRDC challenged previously and that we affirmed.   See *NRDC v. EPA*, 464 F.3d 1 (D.C. Cir. 2006).   NRDC's claim has not changed: in the first case it argued that the 2004 framework was invalid as adopted and applied to determine the 2005 exemption, and now it challenges the 2004 framework—which EPA left unchanged—as applied to determine the 2007 exemption. Under principles of claim preclusion, the first case bars NRDC's new challenge.

\* \* \*

Methyl bromide is used in the United States and throughout the world as a broad-spectrum pesticide and, since 1992, has been a controlled substance under the Montreal Protocol on Substances that Deplete the Ozone Layer.   In

1997 the parties to the Montreal Protocol established a 2005 deadline for phasing out its use and production, but at the same time provided that the phaseout would not apply "to the extent the Parties decide to permit the level of production or consumption that is necessary to satisfy uses agreed by them to be critical uses." Montreal Protocol art. 2H(5), Sept. 16, 1987, S. Treaty Doc. No. 100-10, 1522 U.N.T.S. 29, *as adjusted by the parties*, U.N. Env't Programme, Report of the Ninth Meeting of the Parties to the Montreal Protocol on Substances that Deplete the Ozone Layer, U.N. Doc. UNEP/OzL.Pro.9/12, Annex III (Sept. 25, 1997) ("Ninth Report"). Congress amended the Clean Air Act ("CAA") in October 1998 to adopt the Montreal Protocol's phaseout schedule, CAA § 604(h), 42 U.S.C. § 7671c(h), and to include an exemption for critical uses, CAA § 604(d)(6), 42 U.S.C. § 7671c(d)(6) ("To the extent consistent with the Montreal Protocol, the Administrator [of the EPA] . . . may exempt the production, importation, and consumption of methyl bromide for critical uses.").

In 2004 EPA promulgated a rule "describing the framework for the critical use exception" and approving critical uses for 2005. Protection of Stratospheric Ozone: Process for Exempting Critical Uses From the Phaseout of Methyl Bromide, 69 Fed. Reg. 76,982, 76,985/2 (Dec. 23, 2004) ("Framework Rule"). In setting a framework for the approval of critical uses and of production and importation of methyl bromide for those uses, EPA interpreted Article 2H of the Montreal Protocol and post-ratification decisions of the parties that applied Article 2H. *Id.* at 76,984/2. One such decision limited production and importation to instances where "[m]ethyl bromide is not available in sufficient quantity and quality from existing stocks," *id.* (quoting Ninth Report, Decision IX/6), and EPA read that language as recognizing "the possibility that available stocks could be less than existing stocks," *id.* at 76,987/3. EPA also looked to the

decision of the Montreal parties allowing the United States in 2005: (1) a total amount of permissible critical use of methyl bromide, and (2) a total amount of permissible production and importation of methyl bromide for those critical uses. See *id.* at 76,986/3-76,987/1 (citing the Report of the First Extraordinary Meeting of the Parties to the Montreal Protocol on Substances that Deplete the Ozone Layer, U.N. Doc. UNEP/OzL.Pro.ExMP/1/3, Decision Ex.I/3 (Mar. 27, 2004)). EPA understood that decision to mean that when permissible use exceeded permissible production and importation (as it did in 2005 and in each later year), use of pre-existing stocks of methyl bromide would make up the difference. *Id.*

Applying this interpretation of its responsibilities under the Montreal Protocol, EPA adopted a framework for promulgating critical use exemptions each year. EPA would draw upon existing stocks to make up the difference between each year's permissible critical use, on the one hand, and production and importation, on the other; but it would not make new production and importation contingent on any further drawdown from existing stocks, nor would it place any restriction on the amount of existing stocks that could be devoted to noncritical uses. In adopting that framework, EPA rejected the two arguments that are the subject of this petition for review. First, EPA noted that "[t]wo commenters stated that all stocks must be used before any new production is permitted and that all stocks other than those used for export to developing countries should be considered 'available' for critical uses." *Id.* at 76,987/2. EPA responded that this was not an "accurate characterization" of its duty under the Montreal Protocol and that it would not adopt such a requirement. *Id.* at 76,987/2-3. Second, EPA discussed a "comment stating that there is no legal basis for allowing use of stocks by users that did not apply for or did not qualify for critical use status"; EPA disagreed and said that it would not

require that the drawdown of pre-phaseout stocks be restricted to critical uses. *Id.* at 76,988/1-2.

In an earlier suit in this court, NRDC challenged these two decisions of the Framework Rule, arguing that they were inconsistent with the post-ratification decisions of the parties to the Montreal Protocol and thus in violation of CAA § 604(d)(6)'s provision that the critical use exemption program must be "consistent with the Montreal Protocol." We denied NRDC's petition, holding that the "post-ratification agreements of the parties were not 'law'"; thus any inconsistency between those decisions and the Framework Rule would not render the Rule "not in accordance with law," the relevant standard of review under CAA § 307(d)(9)(A), 42 U.S.C. § 7607(d)(9)(A). *NRDC*, 464 F.3d at 7, 11.

Meanwhile, EPA announced its critical use exemption for 2006, and then its critical use exemption for 2007, the rule under review here. Protection of Stratospheric Ozone: The 2007 Critical Use Exemption From the Phaseout of Methyl Bromide, 71 Fed. Reg. 75,386 (Dec. 14, 2006) ("Final Rule"). (EPA has since then promulgated a critical use exemption for 2008. Protection of Stratospheric Ozone: The 2008 Critical Use Exemption From the Phaseout of Methyl Bromide, 72 Fed. Reg. 74,128 (Dec. 28, 2007).)

In the 2007 Final Rule, EPA said that it was "not changing the framework of the exemption program" but instead was approving critical uses for 2007 and setting the amounts of methyl bromide that would be available from new production and importation, as well as from pre-phaseout stocks, to satisfy those critical uses. 71 Fed. Reg. at 75,389/1. NRDC challenges the 2007 Final Rule as inconsistent with law, pointing to the same two decisions it contested in the original Framework Rule.

EPA, joined in part by intervenors, claims that NRDC's new challenge is an untimely assault upon the 2004 Framework Rule rather than a timely challenge to the 2007 Final Rule, that it is barred by issue and claim preclusion, and that, in any event, NRDC is wrong on the merits. Because we agree that NRDC's petition is barred by claim preclusion, we address neither timeliness nor the merits.

Before addressing claim preclusion, however, we note a possible difficulty with EPA's timeliness argument. Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), establishes a 60-day window for challenges to regulations promulgated and final action taken by the EPA Administrator under the Act. Because EPA's Framework Rule decided the two matters that NRDC now presents for our review, EPA suggests that NRDC's challenge is time-barred unless EPA, in its notice of proposed rulemaking for the 2007 exemption or in the 2007 Final Rule itself, reopened consideration of those matters. See *Envtl. Def. v. EPA*, 467 F.3d 1329, 1332-33 (D.C. Cir. 2006); *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998).

This case is unusual, however, among ones raising statutory time limits and the reopening doctrine: the decision challenged here, being an application of the principles developed in the prior rule, appears to depend for its legality on the legality of that prior rule. Accordingly, it is at least arguable that the timeliness issue here is governed by the established doctrine that parties claiming substantive invalidity of a rule for which direct statutory assault is time-barred are nonetheless free to raise their claims in actions against agency decisions *applying* the earlier rule. See *Murphy Exploration & Prod'n Co. v. Dep't of Interior*, 270 F.3d 957, 958-59 (D.C. Cir. 2001); *NLRB Union v. FLRA*, 834 F.2d 191, 195-96 (D.C. Cir. 1987); *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546-48 (D.C. Cir. 1958); see also *Pub.*

*Citizen v. NRC*, 901 F.2d 147, 151-52 (D.C. Cir. 1990). Because this consideration has not been briefed and other grounds exist for resolving the case, we need not enter this thicket.

\* \* \*

A subsequent lawsuit is barred by claim preclusion "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). Because *NRDC* involved the same parties and proceeded to final judgment in this court, the current petition for review is precluded by our prior judgment if it involves "the same claims." We hold that it does.

In challenging the 2007 Final Rule, NRDC focuses on the same two decisions it contested following promulgation of the Framework Rule: (1) EPA's allowance of continued new methyl bromide production and importation for critical uses despite the existence of stocks sufficient to meet all critical uses, and (2) its failure to prohibit all non-critical uses of those stocks. While NRDC challenges the 2007 exemption, its claim in fact remains the same: that the framework adopted in 2004—and used to calculate the 2007 exemption—is inconsistent with law. Compare the current NRDC Br. 32 ("EPA has defied the key commitment that stockpiles be exhausted before new production is allowed."), and *id.* at 39 (claiming that EPA's approach "is especially unconvincing in light of the Agency's remarkable failure to protect the stockpile from non-critical users"), with its brief in the 2005 case (No. 04-1438) at 26 (arguing that the Framework Rule "unlawfully fails to satisfy" the "obligation" that production

and importation of methyl bromide be permitted only if stocks are insufficient to satisfy critical uses), and *id.* at 28 (claiming that the Framework Rule "exacerbates the unlawful failure to account for stocks by allowing use of the stockpile for *non-critical* purposes"). Whether these two suits are based on the same claim "turns on whether they share the same nucleus of facts." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)). Here NRDC clearly challenges the same two EPA decisions that it challenged in the previous case, arguing that they are inconsistent with the decisions of the parties to the Montreal Protocol that it invoked in that case. None of the underlying facts has changed; in defining the 2007 critical use exemption, EPA applied the same principles that it had established—unlawfully, according to NRDC—in its Framework Rule.

NRDC tries to avoid the force of claim preclusion by arguing that in *NRDC* it limited its claim to a *Chevron* "step one" argument that the Framework Rule violated unambiguous dictates of international agreements that were incorporated into U.S. law, while it now claims that EPA violated its duty to give a reasonable construction of governing statutes under *Chevron* "step two" and that it acted in an arbitrary and capricious manner. NRDC Br. 7, 29-30. It is true that in the earlier proceeding, as we said, "NRDC fashion[ed] the entirety of its argument around the proposition that the 'decisions' under the Protocol are 'law,'" *NRDC*, 464 F.3d at 8, and that its arguments here are subtly different (though they depend overwhelmingly on the same documents as before). But claim preclusion precludes the relitigation of *claims*, not just *arguments*. Unlike issue preclusion, which is aimed at preventing relitigation of issues previously resolved, see, e.g., *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005), claim preclusion is also intended "to prevent 'litigation of matters that *should have been* raised in an earlier

suit,'" *id.* at 1230 (quoting *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985)); accord *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988) ("[R]*es judicata* (claim preclusion) bars relitigation not only of matters determined in a previous litigation but also ones that a party could have raised.").

The two petitions simply offer different legal theories to support the same claim: that two judgments made by EPA in the Framework Rule were unlawful. Cf. CAA § 307(d)(9)(A), 42 U.S.C. § 7607(d)(9)(A) (providing for judicial relief against EPA decisions found "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). NRDC doesn't get a second bite at that same apple. The petition for review is barred by the preclusive effect of our prior decision adjudicating its claims against EPA's framework for adopting critical use exemptions.

*So ordered.*