UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1518

KRONISH LIEB WEINER AND HELLMAN, LLP,

Plaintiff - Appellant,

and

LAWRENCE C. GOTTLIEB; JAMES BELDNER; RICHARD
S. KANOWITZ,

Plaintiffs,

versus

JOHN K. FORT, Chapter 7 Trustee for Spartan
International, Incorporated,

Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Henry F. Floyd, District Judge.
(CA-04-1312-6-HFF; BK-01-10254; AP-03-80324)

Argued:  May 24, 2006            Decided:  September 1, 2006

Before WILKINSON, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion,
in which Judge Wilkinson joined.  Judge Traxler wrote a separate
concurring opinion.

**ARGUED:** Tara Elizabeth Nauful, HAYNSWORTH, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellant. George Barry Cauthen, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** William H. Short, Jr., HAYNSWORTH, SINKLER & BOYD, P.A., Columbia, South Carolina, for Appellant. Linda K. Barr, Jody A. Bedenbaugh, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

In this appeal, we are asked to decide whether a consent order ("Consent Order") entered into by bankruptcy trustee John K. Fort ("Trustee") and the law firm of Kronish Lieb Weiner & Hellman, LLP ("Kronish") precludes the Trustee from bringing a malpractice action against Kronish. For the reasons set forth below, we conclude, as did the bankruptcy and district courts, that it does not.

I.

Debtor Spartan International ("Spartan") was a South Carolina corporation engaged in textile manufacturing. Spartan retained Kronish in September 2000 to assist in Chapter 11 bankruptcy pre-petition activities. Spartan prepared for, but never filed, a Chapter 11 bankruptcy petition. Instead, on the advice of Kronish, it turned over control and possession of its assets to its lender. At the end of Kronish's representation of Spartan in May 2001, Spartan had incurred $26,246.63 in unpaid legal fees. J.A. 8.

Spartan's creditors filed an involuntary Chapter 7 bankruptcy petition against Spartan on May 31, 2001. Thereafter, the bankruptcy court granted the bankruptcy petition and appointed the Trustee.

In December 2001, the Trustee asked Kronish to turn over files related to Kronish's earlier representation of Spartan. Kronish

3

refused, asserting a lien for unpaid attorneys' fees.  For the next five months, Kronish and the Trustee negotiated the terms of the turnover of the files.

Ultimately, in May 2002, the parties reached an agreement, which was memorialized in (1) the Trustee's application for an administrative claim for Kronish ("Application for Administrative Claim") and (2) the Consent Order.  In the Application for Administrative Claim, the Trustee expressly stated that he was requesting an administrative claim for Kronish in exchange for access to Kronish's files:

> Kronish provided bankruptcy and other legal advice to the Debtor at the time that the Debtor ceased operating. Kronish has asserted an attorneys' lien on Spartan files and records for unpaid attorneys' fees.  In resolution of such asserted lien, the parties have agreed that Kronish will receive an administrative claim for $13,057.16.  The files and records held by Kronish are of assistance to the estate in determining further assets which the estate might pursue.  Therefore, the Trustee believes that an administrative claim is an equitable resolution to the asserted lien which will then allow the Trustee free access to the files and records.  The parties have also agreed that the remainder of Kronish's fees will be treated as an allowed, unsecured claim.

J.A. 6-7.  The Consent Order granted Kronish an administrative priority claim in the amount of $13,123.32[1] and an unsecured claim for the remainder of its legal fees in the amount of $13,123.31. Id. at 8-9.  Moreover, the Consent Order reaffirmed that "[t]he allowance of Kronish's administrative and unsecured claim resolve

---

[1]The Trustee paid Kronish's administrative claim on September 3, 2003.

4

[sic] its asserted attorneys' lien on the files it holds from services performed on behalf of the Debtor. Kronish agrees to copy and turnover [sic] all documents requested by the Chapter 7 trustee in this matter." Id. at 8. On July 3, 2002, the bankruptcy court approved the Consent Order without modification. Upon entry of the Consent Order, Kronish allowed the Trustee access to the files.

During the following year, the Trustee brought suit against Kronish, Kronish attorneys, and certain of Spartan's officers and directors. The Trustee contended that but for the advice of the Kronish firm and attorneys, "Spartan would have filed a Chapter 11 proceeding, would have continued operating while going forward under [Debtor in Possession] or under the leadership of a Chapter 11 trustee, assets would have been sold for substantially greater value and Spartan would have emerged successfully from Chapter 11." J.A. 23.

Kronish moved to dismiss the malpractice action, claiming that the Consent Order was "a final order issued by [the bankruptcy court] on the merits of the reasonableness and value of [Kronish's] legal services, it cannot be attacked in a subsequent adversary proceeding." J.A. 49. The Trustee responded on January 30, 2004, by moving for reconsideration of the Consent Order, pursuant to 11 U.S.C. § 502(j). In its motion for reconsideration, the Trustee represented that

> [t]he quality of Kronish's services was never discussed
> as the parties were focused on resolving an asserted

5

lien. In fact, the parties resolved the lien issue prior to the [sic] any review of Kronish files . . . . The parties had no intention of addressing matters in the Consent Order (defined below) other than resolution of the asserted lien so that the Trustee could gain access to the Kronish files in order to conduct a thorough evaluation of Spartan's pre-petition events.

J.A. 328. Likewise, a Kronish attorney stated in his affidavit that "[d]uring the course of [his] negotiations with Trustee [over the retaining lien and attorneys' fees], the quality of [Kronish's] representation of Spartan was never raised or mentioned." J.A. 216.

On March 9, 2004, the bankruptcy court issued an amended order, declaring that the Consent Order had no res judicata effect on the malpractice claim. J.A. 531. The bankruptcy court concluded "it is evident that the consent order did not, and was not intended to, resolve issues relating to the reasonableness and necessity of [Kronish's] services, but was only to satisfy [Kronish's] lien on the debtor's files so that the trustee could obtain possession thereof." Id. at 532. In so doing, the bankruptcy court drew upon its inherent authority to interpret its own orders.

Kronish appealed the bankruptcy court order to the United States District Court for the District of South Carolina, which affirmed on April 5, 2005. Thereafter, Kronish filed a timely notice of appeal of the district court's order.

6

II.

A.

"We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters.), 400 F.3d 219, 224 (4th Cir. 2005). Accordingly, we review the bankruptcy court's factual findings for clear error. Id. By contrast, its legal conclusions, including its interpretation of the Consent Order, are reviewed de novo. Id. (the legal conclusions of a bankruptcy court are subject to de novo review); Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 512 (4th Cir. 2003) (consent orders are reviewed de novo); McDowell v. Phila. Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005) ("The proper construction of the consent decree is a question of law that receives plenary review."); cf. United States v. ITT Continental Baking Co., 420 U.S. 223, 236 (1975) ("[S]ince consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts").

B.

Kronish contends that the Trustee is precluded from bringing a malpractice action because the quality of Kronish's legal services was necessarily at issue when the Consent Order was entered. Kronish's argument goes as follows: (1) an attorney who

commits malpractice has no entitlement to fees; (2) in paying fees, a client indicates that an attorney did not commit malpractice; and therefore (3) an order setting fees necessarily resolves any dispute involving malpractice.  We disagree.

1.

We first consider whether the elements of res judicata are satisfied here.  A prior judgment has res judicata or claim preclusive effect on future litigation when the following conditions are met:

> 1) [T]he prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.), 81 F.3d 1310, 1315 (4th Cir. 1996).

Only the first two elements of res judicata are satisfied here.  First, this Court has repeatedly held that a consent judgment is "for claim preclusion purposes, a final one on the merits."  Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990). Second, without question, the parties to the Consent Order are identical to the parties in the malpractice action.

In evaluating whether the third element is shown, i.e., whether there is identity of claims, "the appropriate inquiry is whether the new claim arises out of same transaction or series of

8

transactions as the claim resolved by the prior judgment." Keith, 900 F.2d at 740 (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)). Where the "same series of connected transactions," is involved, "and the same 'operative facts' are at issue," the third res judicata factor is made out. Id. In this case, it cannot fairly be said that the Consent Order and malpractice action involve the same operative facts. In approving the Consent Order, the court had no need to consider any facts pertaining to the nature, quality, or extent of Kronish's services to Spartan.[2] Nor could the court have properly evaluated the quality of Kronish's services. Because Kronish provided pre-petition services, the bankruptcy court had no basis for evaluating the quality of Kronish's services. Not even the Trustee had full knowledge of the quality of services provided. Those services were

---

[2]For this reason, Kronish's reliance on Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003), is misplaced. In that case, this Court held that the resolution of a fee dispute involving a debtor and the attorney who represented him during bankruptcy proceedings had a preclusive effect on a subsequent malpractice action. Id. at 469. Unlike here, that case involved an award of fees rendered by the bankruptcy court upon receipt of a professional fee application under 11 U.S.C. § 330. We concluded that the malpractice action and prior fee proceeding were based on the same cause of action, because "[t]he fee application proceeding necessarily included an inquiry by the bankruptcy court into the quality of professional services rendered by the [law] firm." Id. at 473. Pursuant to 11 U.S.C. § 330, "[t]he court was required to 'consider the nature, the extent, and the value of such services' before awarding fees. By granting the [law] firm's second and final fee application, the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of Grausz." Id. (quoting 11 U.S.C. § 330(a)(3)) (citations omitted).

provided to Spartan, before the Trustee was even appointed, and Kronish had deprived the Trustee of access to files pertaining to Kronish's representation of Spartan, potential evidence of malpractice.  For these reasons, we conclude that the third res judicata factor is not met here.

2.

Even if we were to find that the elements of res judicata were not satisfied, the parties' intent would lead us to conclude that the Consent Order does not preclude the malpractice action. Specifically, "[w]hen a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties."  Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990).  We elaborated:

> [t]his approach, following from the contractual nature of consent judgments, dictates application of contract interpretation principles to determine the intent of the parties. If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded. . . . Claim preclusion will not apply, however, if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation.

Id. at 740-41.

With this principle in mind, this Court in Keith concluded that the plaintiff was precluded from bringing his action because "the parties mutually manifested their intentions . . . to preclude any future litigation having the objective of obtaining Keith's

10

reemployment with the Air Force." 900 F.2d at 741. The Court observed that "both the agreement and the dismissal order expressly reserve[d] Keith's claim for attorney's fees," but those documents "d[id] not expressly reserve to Keith the right to raise due process or other substantive claims in subsequent litigation." Id. According to the Court, those facts did not reflect an intent to preserve claims other than the attorney's fees claim for future litigation. Id.

The following year, this Court revisited the question of the res judicata effect of consent judgments in Young-Henderson v. Spartanburg Area Mental Health Ctr., 945 F.2d 770 (4th Cir. 1991). This time, the Court concluded that the language of the consent order specifically reserved for the plaintiff the right to bring the claim at issue.

> By the terms of the Consent Order here, the parties and the court below agreed that it would "only terminate[] the claims raised in the complaint [and that the Consent Order would] not in any way affect any other charges or claims filed by the Plaintiff subsequent to the commencement of this . . . action." Fairly interpreted, the Consent Order manifests an intent to preclude only those claims that were raised in the complaint in Henderson I. It does not manifest an intent to preclude claims which could have been brought but were not, and it does not manifest an intent to preclude claims which did not arise until after the complaint was filed. If the parties intended to preclude all claims that could have been brought at the time the Henderson I complaint was filed, or if they wished to preclude claims that might have arisen after the complaint was filed, they surely could have worded the Consent Order to achieve that effect.

Id. at 774-75.

11

Although the Consent Order at issue here does not speak in terms that are quite as clear as the orders in <u>Keith</u> and <u>Young-Henderson</u>, it nonetheless reflects an intent on the part of the parties to "settle only one part of a single claim and . . . to leave another part open for future litigation." <u>Keith</u>, 900 F.2d at 741. By its terms, the Consent Order has a limited purpose: "The allowance of Kronish's administrative and unsecured claim resolve [sic] its asserted attorneys' lien on <u>the files</u> it holds from services performed on behalf of the Debtor. Kronish agrees to copy and turnover [sic] all <u>documents</u> requested by the Chapter 7 trustee in this matter." J.A. 8 (emphases added). Likewise, the Application for Administrative Claim evinces that in entering the Consent Order, the parties focused solely on the turnover of the files in Kronish's possession:

> The <u>files</u> and <u>records</u> held by Kronish are of assistance to the estate in determining further assets which the estate might pursue. Therefore, the Trustee believes that an administrative claim is an equitable resolution to the asserted lien which will then allow the Trustee free access to the <u>files</u> and <u>records</u>.

J.A. 6 (emphases added). Thus, by the clear language of the Consent Order and Application for Administrative Claim, it is quite clear that the Consent Order was only intended to resolve the Trustee's right to access Kronish's <u>files</u>, <u>documents</u>, and <u>records</u>. The conspicuous absence of any mention or allusion to the quality

12

of Kronish's legal services persuades us that the Consent Order was not intended to resolve that issue.[3]

### III.

Having concluded that the elements of res judicata are not satisfied here, and that the parties did not intend for the Consent Order to preclude a subsequent action for legal malpractice, we affirm the district court's decision.

AFFIRMED

---

[3]Likewise, we are not persuaded that "like any order fixing attorneys' fees, an order resolving a retaining lien necessarily determines whether or not counsel committed malpractice." Br. of Appellant at 15. As discussed above, in entering the Consent Order, the bankruptcy court did not consider the quality or value of Kronish's pre-petition services to Spartan. And, the parties did not manifest an intent for the Consent Order to resolve the quality of services provided by Kronish. Our conclusion is not affected by the principle in New York law that "upon asserting a retaining lien, outgoing counsel is entitled to a summary determination fixing the value of his services and the amount so fixed must be paid or otherwise secured before a turnover of the papers relating to the client's case may be ordered." Brenner v. Miller, 121 Misc. 2d 1, 2 (N.Y. Sup. Ct. 1983)). Federal law, not New York law, controls the question of the preclusive effect of the Consent Order. Keith v. Aldridge, 900 F.2d 736, 739 (4th Cir. 1990) ("federal law controls [this Court's] assessment of the preclusive effect of the earlier federal judgment . . . .").

TRAXLER, Circuit Judge, concurring:

I concur in the opinion of my colleague Judge Gregory. I write only to emphasize that when a party contends that the entry of a Consent Order has preclusive effect as to a subsequent action, the application of the res judicata doctrine is modified. See Keith v. Aldridge, 900 F.2d 736, 740-41 (4th Cir. 1990). In such a case, "preclusive effect . . . is determined by the intent of the parties" because of "the contractual nature of consent judgments." Id. at 740, 741; see also Young-Henderson v. Spartanburg Area Mental Health Cntr., 945 F.2d 770, 774 (4th Cir. 1991). A judgment entered "based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1288 (11th Cir. 2004). It follows that we apply traditional "contract interpretation principles to determine . . . [i]f the parties intended to foreclose through agreement litigation of a claim." Keith, 900 F.2d at 741. "The best evidence of [the parties'] intent is, of course, the settlement agreement itself." Norfolk, 371 F.3d at 1289; see United States v. Armour & Co., 402 U.S. 673, 682 (1971) (observing that "the scope of a consent decree must be discerned within its four corners"). Only if the Consent Decree is ambiguous or unclear should we look beyond the Order itself to

14

determine whether the parties intended preclusive effect. <u>See</u> <u>Norfolk</u>, 371 F.3d at 1290.

Thus, the terms of the Consent Order drive our analysis, not the original complaint, and there is no need to engage in an identity of claims analysis that is not dependent on principles of contract. In this case, for the reasons Judge Gregory rightly points out, the Consent Order does not evidence an intent to foreclose the Trustee's malpractice claim.