**Sonya OWENS, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civil Action No. 08–2029 (ESH).

United States District Court, District of Columbia.

July 6, 2009.

Sonya Owens, Washington, D.C., pro se.

David A. Jackson, District of Columbia, Office of the Attorney General, Washington, D.C., for Defendants.

## MEMORANDUM OPINION

ELLEN SEGAL HUVELLE, District Judge.

Plaintiff Sonya Owens, proceeding *pro se*, has filed an amended complaint alleging that the District of Columbia, Office of the Corporation Counsel (now referred to as the Office of the Attorney General of the District of Columbia ("OAG")), and Mayor Adrian Fenty, in his official capacity, engaged in unlawful employment discrimination and retaliation, defamation, and deprivation of civil rights in violation of a variety of federal statutes, as well as the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C.Code 1–601.1 *et seq.* Plaintiff seeks both monetary damages and equitable relief, including reinstatement. Plaintiff's allegations against these same defendants formed the basis of an earlier complaint that she filed in this Court, with the assistance of counsel, alleging discrimination on the basis of

race and gender, as well as unlawful retaliation. *See Owens v. District of Columbia* ("*Owens I*"), No. 05–CV–1729, 2005 WL 2453565 (D.D.C. filed Aug. 31, 2005). That civil action came before Magistrate Judge Alan Kay, went to trial, and resulted in a jury verdict for defendants. *See* Clerk's Judgment, *Owens I*, No. 05–CV–1729 (D.D.C. Jan. 24, 2008). Defendants have filed a motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendant's motion will be granted in part and denied in part.

## BACKGROUND

### I. FACTUAL BACKGROUND

The facts, as alleged in the amended complaint and established through exhibits and other court documents, are as follows:

Plaintiff was a captain with the District of Columbia Metropolitan Police Department ("MPD"). (Am. Compl. ["Compl."] [Dkt. No. 12] ¶ 4.) In June 2001, plaintiff was interviewed by the Equal Employment Opportunity Commission ("EEOC") as a witness during the investigation of gender and pregnancy discrimination complaints filed by two other officers against a MPD district commander. (*Id.* ¶ 6.) During the course of that investigation, plaintiff stated that the two officers had been subject to "disparate inequitable treatment." (*Id.* ¶ 7.) In July 2004, the MPD learned that the two officers had filed a federal discrimination lawsuit, and in November, the MPD learned that plaintiff had been summoned as a witness in that suit. (*Id.* ¶¶ 16, 18.) Subsequently, plaintiff's "police powers were revoked," "her access to the general public was restricted," her "duty assignments and responsibilities were removed without being told beforehand," and she received a notice of proposed suspension "for 'overdue correspondence.'" (*Id.* ¶¶ 19–20.) In February

2005, plaintiff testified in the discrimination lawsuit. (*See id.* ¶¶ 21–26.) MPD then informed her that she would be suspended as previously notified. (*Id.* ¶ 27.)

In March 2005, plaintiff was interviewed by Internal Affairs regarding a citizen complaint filed by the State of Virginia Arlington County Animal Welfare Shelter ("AAS"). (Compl. ¶¶ 28–33.) Plaintiff, having apparently viewed this interview as a custodial interrogation, "invoked her civil rights...." (*Id.* ¶ 32.) That same month, following this interview, the MPD "revoked all of [plaintiff's] official duties," referred her to the Office. of Professional Responsibility for follow-up questioning on the AAS matter (for which plaintiff sought legal advice and counsel), and suspended her for two weeks for "overdue correspondence." (*Id.* ¶¶ 34–48.) Plaintiff appealed her suspension to the Office of Employee Appeals ("OEA"). (*Id.* ¶ 49.)

In April 2005, plaintiff was again suspended for twelve days for being absent without leave ("AWOL") for 80 hours during her previous suspension. (Compl. ¶ 58.) She therefore supplemented her pending OEA appeal to cover this second suspension. (*Id.* ¶ 60.) In May plaintiff received a notice of proposed termination from the MPD for, among other things, being involved in criminal activity. (*Id.* ¶ 61.) In response, she requested copies of all documents and information relevant to the MPD's "investigation(s)" (presumably relating to the claim of her involvement with criminal activity), although she did not receive anything in response to that request. (*Id.* ¶¶ 62, 64.) In August, after she filed a Notice of Intent to sue the District, the MPD conducted a termination hearing and, shortly before the hearing, provided her with some of the information she had previously requested. (*Id.* ¶¶ 65–67.) Plaintiff requested a continuance of the hearing so that she could review the

information she had been given, and the continuance was granted, although she was not notified of this. (*Id.* ¶¶ 68–69.)

On August 31, 2005, plaintiff filed *Owens I* alleging discrimination and retaliation under 42 U.S.C. § 1981 and three provisions of the D.C. Human Rights Act ("DCHRA"), D.C.Code § 2–1402.11 and § 2–1402.61(a) & (c). (*See* Defs.' Mot. to Dismiss Amended Compl. ["Mot."] [Dkt. No. 14], Ex. 1 (*Owens I* complaint) at 15–19.) Shortly thereafter, the MPD resumed plaintiff's termination hearing without notifying her and included several additional charges. (Compl. ¶¶ 71–72.) In October 2005, the MPD notified plaintiff that it had decided to terminate her employment as of November. (*Id.* ¶ 73.) In December, plaintiff appealed her termination to the OEA. (*Id.* ¶ 74.)

In July 2006, an OEA administrative law judge ("ALJ") dismissed plaintiff's appeal of her suspension. (Compl. ¶ 75.) In August, plaintiff filed a petition seeking review of that dismissal by the Board of the OEA ("the Board"). (*Id.* ¶ 76.) In September, the OEA also ordered MPD to provide plaintiff with transcripts of her termination hearings, and in October, the OEA conducted a hearing on plaintiff's termination appeal. (*Id.* ¶¶ 77–78.) A year later, in November 2007, an OEA ALJ upheld the termination. (*Id.* ¶ 79.) In December plaintiff filed a petition for review of her termination with the Board. (*Id.* ¶ 80.)

*Owens I* went to trial in January 2008, with Magistrate Judge Alan Kay presiding. Plaintiff contends that during trial, witnesses for the MPD and the AAS testified that the AAS did not, in fact, file a citizen complaint regarding plaintiff, and that MPD witnesses also testified about

how, among other things, the MPD "had conducted 'an ongoing criminal investigation that never stopped' " since November 2004. (Compl. ¶¶ 81–87.) On January 22, the jury found for the defendants, concluding that plaintiff had failed to prove that defendants had retaliated or discriminated against her. (Mot., Ex. 2 (*Owens I* jury verdict form) at 1–2.) The judgment in *Owens I* was entered two days later. (*See id.*, Ex. 3 (*Owens I* judgment).) No appeal was taken from this judgment.

On April 9, 2008, plaintiff filed a petition for review with the District of Columbia Court of Appeals that "raise[d] the issues in this suit" and sought review of the OEA ALJ's decisions. (Pl.'s Opp'n to Mot. to Dismiss ("2nd Opp'n")[1] [Dkt. No. 17] at 3; *see id.* at 7 (Court of Appeals order).) However, on May 7, 2008, the Court of Appeals dismissed the petition for lack of jurisdiction. (*Id.*, Ex. 1 at 7.) The court explained that because plaintiff's petitions for review were also still pending with the OEA Board, no appealable final administrative order had been issued. (*Id.* at 3.) The dismissal was without prejudice to plaintiff "filing a petition for review once a final order has issued." (*Id.*)

On May 12, 2008, plaintiff moved to withdraw her two petitions for review that were pending before the OEA Board. (Compl., Ex. 1 at 5–7.) On July 24, the Board granted plaintiff's motion, dismissed both appeals, and served plaintiff with notice. (Compl. ¶ 87 & Ex. 1 at 2, 4.) The Board's order of dismissal noted that the ALJ's initial decisions would become the OEA's "final decision[s]" after five days— *i.e.*, on or about August 1, 2008—and that once plaintiff received formal notice of the final decisions, she would have 30 days to

---

**1.** This opposition brief does not contain all of plaintiff's arguments. She also filed a separate opposition entitled "Plaintiff's Opposition to the Defendant's [*sic*] Motion to Amend Parties" ("1st Opp'n"). [Dkt. No. 16.]

take an appeal to the Superior Court of the District of Columbia. (Compl., Ex. 1 at 3.) Subsequently, plaintiff appears to have filed another petition with the Court of Appeals, because on September 25, the court "dismiss[ed] her petition as [she] is not aggrieved . . . ." (2nd Opp'n at 7 (Court of Appeals order).) Plaintiff moved for reconsideration but the Court of Appeals denied that motion on October 10, noting that "petitioner has suffered no legal injury after the Office of Employee Appeals granted her motion to dismiss the petitions . . . ." (*Id.*)

## II. THE INSTANT ACTION

On November 25, 2008, plaintiff initiated this action. The amended complaint was filed on March 20, 2009. Paragraphs 3 through 64 of the amended complaint recount factual allegations that were the gravamen of the complaint in *Owens I*. However, paragraphs 65 through 87 of the amended complaint recount additional facts following the initiation of *Owens I*, pertaining to the administrative events leading up to and following her termination from the MPD. The amended complaint presents seven counts. Count One alleges that defendants retaliated against plaintiff, in violation of 42 U.S.C. § 1983, because she engaged in the protected activity of supporting the two female officers against the MPD in their EEO proceedings and lawsuit. (Compl. ¶¶ 88–112.) Count Two alleges that defendants retaliated against plaintiff in violation of the False Claims Act's whistleblower protections, 31 U.S.C. § 3730(h). (*Id.* ¶¶ 113–120.) Count Three alleges that defendants violated various provisions of the CMPA by, among other things, terminating her without cause and failing to follow a variety of personnel regulations in suspending her, firing her, and adjudicating her appeals of the suspensions and firing. (*Id.* ¶¶ 121–131.) Count Four alleges that de-

fendants retaliated against plaintiff, in violation of 42 U.S.C. § 1981, by "conduct[ing] a hearing that terminated her employment" shortly after she initiated the *Owens I* lawsuit. (*Id.* ¶¶ 133–134.) Count Five alleges that defendants defamed plaintiff by making statements "so stigmatizing that they severely disqualify and [a]ffect her potential future employment . . . ." (*Id.* ¶ 143.) For example, plaintiff alleges that her personnel record "states that she was terminated because [defendants] convicted her of filing a false police report, engaging in criminal misconduct with conviction in a court of law, conduct unbecoming[,] and insubordination." (*Id.* ¶ 142.) Counts Six and Seven allege that defendants violated 18 U.S.C. §§ 241 and 242 by conspiring to deprive and actually depriving plaintiff of her constitutional rights by, among other things, the MPD's conduct during the investigation into the AAS complaint. (*Id.* ¶¶ 149–161.)

## ANALYSIS

### I. STANDARD OF REVIEW

" 'When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.' " *Atherton v. Dist. of Columbia Office of Mayor,* 567 F.3d 672, 681 (D.C.Cir.2009) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)) (edits omitted). " 'So long as the pleadings suggest a "plausible" scenario to show that the pleader is entitled to relief, a court may not dismiss.' " *Id.* (quoting *Tooley v. Napolitano,* 556 F.3d 836, 839 (D.C.Cir.2009)) (edits omitted). However,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks and citations omitted).

■ "A *pro se* complaint," such as plaintiff's, " 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Atherton,* 567 F.3d at 681 (quoting *Erickson,* 551 U.S. at 94, 127 S.Ct. 2197). "But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Id.* at 681–82 (quoting *Iqbal,* 129 S.Ct. at 1950).

## II. AMENABILITY OF DEFENDANTS TO SUIT

■ Defendants correctly argue that because the OAG is a subordinate agency of the District of Columbia government, it may not be sued in its own name. "[A] subordinate governmental agency may not sue or be sued in the absence of a statutory provision to that effect." *Trifax Corp. v. Dist. of Columbia,* 53 F.Supp.2d 20, 26 (D.D.C.1999); *see Kundrat v. Dist. of Columbia,* 106 F.Supp.2d 1, 5 (D.D.C.2000) (citing cases). Given the absence of any statutory authority enabling suits against the OAG in its own name, the OAG will be dismissed. *See, e.g., Doe v. Dist. of Columbia,* 609 F.Supp.2d 38, 40–41 (D.D.C.

2009) (dismissing two District agencies as *non sui juris* ).

■ Plaintiff has also sued Mayor Fenty in his official capacity only. Defendants seek to dismiss the claims against the Mayor on the theory that "this suit is in reality a suit against the District. . . ." (Mot. at 8.) Defendants are correct "that a lawsuit against the Mayor acting in his official capacity is the same as a suit against the District. However, even though retaining the Mayor as a party in the suit is redundant, there is no requirement that, because of the equivalence, the public official defendant must be dismissed. Accordingly, the Court denies the motion to dismiss the claims against the Mayor in his official capacity." *Johnson v. Dist. of Columbia,* 572 F.Supp.2d 94, 112 (D.D.C.2008) (internal quotation marks and citation omitted); *see also Winder v. Erste,* No. 03–CV–2623, 2005 WL 736639, at *5 (D.D.C. Mar. 31, 2005) (declining to dismiss District official where plaintiff claimed unlawful retaliation in violation of 42 U.S.C. § 1983).

## III. COUNT TWO

■ Count Two of the complaint alleges that defendants retaliated against plaintiff in violation of the False Claims Act, 31 U.S.C. § 3730(h). Section 3730 permits private citizens to bring *qui tam* actions in the government's name for violations of § 3729, which defines the false claims prohibited under the Act. *See* 31 U.S.C. §§ 3729 & 3730(b)(1). Section 3730(h) only prohibits employers from retaliating against employees "because of lawful acts done by the employee . . . in furtherance of *other efforts to stop 1 or more violations of this subchapter.*" *Id.* § 3730(h)(1) (emphasis added); *see generally id.* §§ 3721–3733 (subchapter provisions). Because the complaint does not allege that plaintiff attempted to stop a false claim against the

government,[2] it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949 (internal quotation marks omitted). Plaintiff has therefore failed to state a claim under § 3730(h), and Count Two shall be dismissed.

## IV. COUNTS SIX AND SEVEN

■ Counts Six and Seven of the complaint allege that defendants violated 18 U.S.C. §§ 241 and 242. These criminal statutes do not provide a private right of action. *Crosby v. Catret,* 308 Fed.Appx. 453, 453 (D.C.Cir.2009) ("The district court properly rejected appellant's attempt to invoke 18 U.S.C. § 241 and 18 U.S.C. § 242 to initiate a prosecution against the named defendants because there is no private right of action under these criminal statutes."); *Johnson v. D.C. Criminal Justice Act,* 305 Fed.Appx. 662, 662 (D.C.Cir. 2008) (same). For this reason, Counts Six and Seven will be dismissed.

## V. THE REMAINING COUNTS

Defendants have also moved to dismiss Counts One, Three, Four, and Five on grounds of *res judicata* and to dismiss Count Five's defamation claim on statute of limitations grounds. The Court will address these arguments in turn.

### A. Res Judicata

■ Defendants argue that plaintiff's lawsuit must be dismissed "[u]nder the doctrine of *res judicata* and the closely related principle of claim preclusion," because this action involves the same parties and arises out of the same set of operative facts as *Owens I,* which was concluded with a final adjudication on the merits. (Mot. at 9–10.) " 'Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.' " *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC,* 569 F.3d 485, 490 (D.C.Cir.2009) (quoting *Smalls v. United States,* 471 F.3d 186, 192 (D.C.Cir.2006)). "[C]laim preclusion is [ ] intended to prevent litigation of matters that *should have been* raised in an earlier suit." *NRDC v. EPA,* 513 F.3d 257, 261 (D.C.Cir.2008) (internal quotation marks omitted). For this reason, "[r]es judicata bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised." *Capitol Hill Group,* 569 F.3d at 491 (internal quotation marks, edits, and ellipsis omitted). In other words, " 'claim preclusion precludes the litigation of *claims,* not just *arguments.*' " *Id.* at 490 (quoting *NRDC,* 513 F.3d at 261).

■ Plaintiff contends that the elements "necessary to trigger a 'res judicata' defense do not exist." (2nd Opp'n at 3.) This is incorrect.[3] It is clear that this action and *Owens I* involve the same parties: plaintiff, the District of Columbia, and the Mayor. It is also clear that the two actions involve substantially the same

---

2. A "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

3. The Court also rejects plaintiff's contention that defendants' *res judicata* argument is untimely.

claims or causes of action. "[T]here is an identity of the causes of action when the cases are based on the same nucleus of facts because it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies." *Capitol Hill Group*, 569 F.3d at 490 (internal quotation marks omitted). Here, paragraphs 3 through 64 of the instant complaint are virtually identical to allegations found in the *Owens I* complaint's statement of facts. (*Compare* Compl. ¶¶ 3–64 *with* Mot., Ex. 1 ¶¶ 3–102.) Therefore, the two actions share a common factual nucleus, and to the extent that plaintiff's claims are based upon the allegations that are duplicative of those made in *Owens I*, plaintiff could have and should have brought those claims in *Owens I*. *See, e.g., Nader v. Democratic Nat'l Comm.*, 590 F.Supp.2d 164, 170 (D.D.C.2008) (finding claims barred under *res judicata* where they were or could have been brought in previous civil action). Finally, the jury verdict in *Owens I* was a final and valid adjudication of the merits of plaintiff's discrimination and retaliation claims, which were also the basis for the allegations repeated in paragraphs 3 through 64 of the instant complaint.

▮ Accordingly, plaintiff's remaining causes of action are barred to the extent that they arise from facts alleged in paragraphs 3 through 64. *See Moment v. Dist. of Columbia*, No. 05–CV2470, 2007 WL 861138, at *3–*4 (D.D.C. Mar. 20, 2007) (finding claims barred under *res judicata* where plaintiff's instant allegations were identical to those made against same defendants in previous action). However, to the extent that plaintiff's claims are based upon issues that were not and could not

have been raised in *Owens I*—namely, those stemming from her termination and her efforts to administratively appeal that termination [4]—they are not barred by *res judicata*.

## B. Statute of Limitations as to Defamation

▮ Defendants also move to dismiss plaintiff's defamation claim as time-barred. "In the District of Columbia, the statute of limitations for defamation is one year." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998); *accord Savoy v. VMT Long Term Care Mgmt. Co., Inc.*, 522 F.Supp.2d 211, 213 (D.D.C.2007) ("[Under D.C. law], any claim for slander must be brought within one year from the time the action accrues . . . ."); *see* D.C.Code § 12–301(4). " 'Defamation occurs on publication, and the statute of limitations runs from the date of publication.' " *Wallace*, 715 A.2d at 882 (quoting *Foretich v. Glamour*, 741 F.Supp. 247, 252 (D.D.C.1990)); *accord Thomas v. News World Communications*, 681 F.Supp. 55, 73 (D.D.C.1988) ("Libel actions [under D.C. law] accrue on the date of publication.").

▮ Here, plaintiff's only remaining defamation claims relate to defendants' alleged statements relating to the reasons for her termination. Such claims are subject to the CMPA's administrative exhaustion requirements. *See Washington v. Dist. of Columbia*, 538 F.Supp.2d 269, 278–80 (D.D.C.2008) (concluding that supervisor's allegedly defamatory statements were sufficiently related to "personnel" issues and therefore "require[d] the exhaustion of CMPA remedies prior to filing suit"). It appears from the complaint that

---

4. In *Owens I*, plaintiff did not amend her complaint to include any claims arising from the termination, nor did the Court's review of

plaintiff's pleadings or the jury instructions in *Owens I* reveal that her termination was ever cited as a retaliatory action.

plaintiff indeed sought to exhaust her administrative remedies by taking an appeal to the OEA's ALJ and Board and receiving a final decision before pursuing judicial relief. (*See* Compl. ¶¶ 74–80, 87 & Ex. 1.) *Cf. Hoey v. Dist. of Columbia,* 540 F.Supp.2d 218, 231 (D.D.C.2008) (dismissing defamation claims for failure to exhaust because plaintiff "was first required by the CMPA to present them to OEA and obtain a Final Decision from that body before pursuing judicial relief"). Other judges of this Court have deemed it appropriate to equitably toll statutes of limitations under D.C. law where claimants first sought to exhaust their available administrative remedies. *See Waldau v. Coughlin,* No. 95–CV–1151, 1996 WL 312197, at *9 (D.D.C. June 3, 1996) (concluding that plaintiff's efforts to administratively exhaust claims through Merits Systems Protective Board tolled statute of limitations for *Bivens* claims under D.C. law); *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.,* 547 F.Supp.2d 1, 5–6 (D.D.C.2008) (finding "good cause to equitably toll the District of Columbia's three-year statute of limitations" for plaintiff's ERISA claim because she "pursued her rights diligently" through mandatory channels for exhausting administrative remedies (internal quotation marks and edits omitted)); *cf. Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 & n. 8 (D.C.Cir.1982) (rejecting laches defense where delay in filing suit resulted from exhausting administrative remedies because, *inter alia,* "it would be an injustice to unsuccessful bidders [on government procurement contracts] if we now penalized them merely for exhausting those administrative remedies" and because plaintiff's "many attempts to receive administrative relief served to put the government on notice

that [plaintiff] was not sleeping on its rights"). The Court concludes that the complaint states facts which, if true, could support a finding of exhaustion and thereby merit equitable tolling of the one-year statute of limitations for defamation claims until the date when the OEA's decisions became final: on or about August 1, 2008. Accordingly, the Court will not dismiss plaintiff's defamation claims relating to her termination.

## VI. PLAINTIFF'S REQUEST FOR NEW TRIAL

In her opposition, plaintiff asserts that she is entitled to a new trial pursuant to Federal Rule of Procedure 60(b). (2nd Opp'n at 4.) Rule 60(b) provides that "[o]n motion and just terms, the [C]ourt may relieve a party … from a final judgment" for several enumerated reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" and "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.…" Fed.R.Civ.P. 60(b)(2) & (3). Here, plaintiff contends that during the *Owens I* trial, defendants allegedly "admitted to making a false police report, knowingly suspending her twice for the same act, and conducting an ongoing criminal investigation," and that such admissions are newly discovered evidence and proof of fraud. (2nd Opp'n at 4–5.) Construing plaintiff's argument as a motion under Rule 60(b)(2) and (3) for relief from the final judgment in *Owens I,* the Court must deny plaintiff's request as untimely.[5]

 Motions under Rule 60(b) for reasons of mistake, newly discovered evidence, or fraud "must be made … no more than a year after the entry of the

---

**5.** In addition, as correctly argued by defendants, any Rule 60(b) request for relief from the judgment in *Owens I* must be addressed to

Magistrate Judge Kay. (*See* Reply at 4 (citing authorities).)

judgment or order or the date of the proceeding" from which the movant seeks relief. Fed.R.Civ.P. 60(c)(1). This one-year time limit is "ironclad," *Goland v. Central Intelligence Agency*, 607 F.2d 339, 372 (D.C.Cir.1978) (discussing motion based on newly discovered evidence), and cannot be extended by the Court. *See Carr v. Dist. of Columbia*, 543 F.2d 917, 925–26 (D.C.Cir.1976) ("We see no elasticity in Rule 60(b)'s one-year time limit on the motions to which it applies; it is not judicially extendable . . . ." (footnote omitted)).

■ The judgment in *Owens I* was issued on January 24, 2008. Plaintiff's opposition motion containing her request for a new trial was not filed until May 13, 2009—almost four months beyond the one-year time limit. The Court must therefore deny plaintiff's request for relief under Rule 60(b)(3). *See Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 643 (D.C.Cir.1996) (rejecting challenge to original judgment under Rule 60(b)(3) where challenge was made three months after one-year time limit).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part. OAG is dismissed as a defendant. Counts Two, Six, and Seven are dismissed in their entirety. Counts One, Three, Four, and Five are dismissed to the extent that their claims are based on paragraphs 3 through 64 of the amended complaint; they survive defendants' motion to the extent that their claims arise from (1) the termination of plaintiff's employment with the MPD or (2) the allegations of paragraphs 65 through 87 of the amended complaint. A separate order accompanies this Memorandum Opinion.